# IN THE UNITED STATES DISTRICT COURT
## DISTRICT COURT OF ALASKA

MICHAEL WADE DAVISON,

        Plaintiff,

    v.

EDWARD C. MOONEY,

        Defendant.

3:24-cv-00074-ACP

**ORDER GRANTING
SUMMARY JUDGMENT**
[Dkt. 22]

Michael Wade Davison (the Plaintiff) was carrying a long knife on his belt and blustering around at a Fourth of July event. After Davison squared up to a bystander as if preparing to fight, Officer Edward Mooney (the Defendant) placed him under arrest for disorderly conduct. But no other officers were nearby. So, when Davison refused the command to raise his hands and began walking away, Officer Mooney deployed his taser on Davison five times in total before securing Davison in handcuffs. Davison later pleaded guilty to two criminal charges stemming from the incident.

Davison then filed this lawsuit under 42 U.S.C. § 1983, arguing that Officer Mooney's taser use constituted excessive force under the Fourth Amendment. Officer Mooney moved for summary judgment on two grounds (1) he did not use excessive force and (2) he is entitled to qualified immunity. As explained below, the Court concludes that Officer Mooney is entitled to qualified immunity because it was not clearly established that using a taser on Davison was unconstitutional. The motion for summary judgment is therefore GRANTED.

# I.   BACKGROUND

The best evidence of what happened comes from video footage of the event.[1] While the Court must view the evidence in the light most favorable to Davison, as the non-moving party, it does not need to accept a view of the facts that is contradicted by video footage.[2] When viewing the video, three pieces of context are important. First, Officer Mooney had already been warned that someone fitting Davison's description (i.e., "a male wearing a black cowboy hat") "had been hostile to other officers in the area" earlier in the day.[3] Second, Davison has a large knife on his belt during the entire encounter. Third, Officer Mooney is the only officer on the scene.

The video footage begins with Davison antagonizing three young men and Officer Mooney. Approximately thirty seconds into the recording, Davison moved directly into a bystander's face in an aggressive manner, suggesting that he was preparing to fight. The two stood roughly one foot apart. Davison then turned and squared up to Officer Mooney as if challenging him. Although several people were speaking at once, Officer Mooney warned Davison not to engage in disorderly conduct. Davison then stepped back, placing himself out of striking distance, while continuing to verbally antagonize the group.

---

[1] Each party submitted video evidence of the event. Officer Mooney's body-camera footage is at Docket 23; cellphone footage submitted by Davison is at Docket 27. Readers can assume that sentences in this section summarize relevant video footage unless indicated otherwise.

[2] *See Scott v. Harris*, 550 U.S. 372, 378-80 (2007).

[3] Dkt. 22-1 at 1.

Officer Mooney told the bystanders to "ignore [Davison]" because "he's got nothing better to do." Davison responded that "this cop [is] not gonna do nothing for you guys." A few seconds later, one of the bystanders turns to Davison and challenges him "do something about it." Davison then says "come on, come on" and steps toward the bystander. A different bystander says "can you please hit one of us so we can break you."

At that point Officer Mooney apparently decided enough disorderly conduct had occurred to affect an arrest. Mooney told Davison "causing a fight, put your hands up now" while raising his taser. Davison took three or four steps backward and did not raise his hands. Officer Mooney then deployed the taser in dart mode, striking Davison.[4] Despite being hit with a taser, Davison turned and ran away for several seconds before crashing into a car and falling to the ground.

Officer Mooney physically apprehended Davison, while commanding him to "put [his] hands behind [his] back." Cell phone footage from a bystander shows that Davison put one hand behind his back, but the other hand remained free and holding a cell phone. While struggling to detain Davison, Officer Mooney deployed the taser in drive-stun mode[5] several times, and Davison did not immediately comply by placing his free hand behind his back.

---

[4] "Dart mode involves propelling a pair of metal darts at a rate of more than 160 feet per second and delivering a 1200-volt electrical charge that instantly overrides the recipient's central nervous system, causing temporary paralysis." *Isayeva v. Sacramento Sherrif's Dep't*, 872 F.3d 938, 948 n.4 (9th Cir. 2017).

[5] "Drive-stun mode involves pushing two electrode contacts directly against the individual and delivering an extremely painful electric shock" that is "less incapacitating" than dart mode. *Id.* at 943 n.1, 950 (citation modified).

With no other officers around, Officer Mooney called to bystanders for help, yelling "give me a hand." After waiting several seconds, and before the bystanders arrived, Officer Mooney tased Davison again while he was on the ground. The taser was engaged for about 8-9 seconds.

Officer Mooney again told Davison to put his hands behind his back. Davison protested that he couldn't move, while still holding his cell phone. After Officer Mooney tased Davison again for a few seconds before he found that he could, in fact, move and placed his hand behind his back.[6]

Officer Mooney again informed Davison that he was under arrest for disorderly conduct and explained that he needed to keep his hands behind his back or he would be tased again. Two bystanders helped Officer Mooney keep Davison pinned down until he was handcuffed, more officers arrived, and the commotion died down.

Davison later pleaded guilty to disorderly conduct and harassment.[7] He also filed this lawsuit.

## II. LEGAL STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] At this stage, the "facts

---

[6] It is not clear precisely when each taser event begins and ends, but the parties do not dispute that Davison was tased a total of five times, once is dart mode and four times in drive-stun mode.

[7] Dkt. 22-1 ¶ 5 (Mooney Declaration).

[8] Fed. R. Civ. P. 56(a).

must be viewed in the light most favorable to the nonmoving party."[9] But the Court will not adopt a view of the facts that is "blatantly contradicted by the record."[10]

The moving party has the "initial burden of demonstrating the absence of a genuine issue of fact for trial."[11] If this showing is made, the non-moving party must offer evidence "set[ting] forth specific facts showing that there is a genuine issue for trial."[12]

### III.   ANALYSIS

#### A.   *Qualified immunity shields officers from liability unless they violate clearly established law.*

Qualified immunity provides sweeping protection from liability to police officers serving in the line of duty. The doctrine balances the "need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" against the "need to hold public officials accountable when they exercise power irresponsibly."[13] But the Supreme Court has, without question, tended to fall on the side of shielding officers and protecting them for all but egregious violations of well-established law.[14] Indeed, the Supreme Court regularly reverses courts that deny qualified immunity to officers.[15]

---

[9] *Scott*, 550 U.S. at 380.

[10] *Id.*

[11] *Deveraux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[13] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[14] *See id.*; *Zorn v. Linton*, 607 U.S. __, 9 (2026) (Sotomayor, J., dissenting) (calling modern doctrine an "absolute shield") (quoting *Kisela v. Hughes*, 584 U.S. 100, 121 (2018); *see also Pina v. Est. of Dominguez*, 604 U.S. __, 145 S. Ct. 527, (2025) (Alito, J., dissenting from denial of certiorari).

[15] *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 8 (2021) (per curiam); *City of Tahlequah v. Bond*, 595 U.S. 9, 13-14 (2021) (per curiam); *City of Escondido v. Emmons*, 586 U.S. 38, 44 (2019) (per curiam); *Kisela v. Hughes*, 584 U.S. 100, 108 (2018) (per curiam); *Dist. of*

Those reversals explain that the doctrine of qualified immunity protects officers "unless their conduct violates clearly established law."[16] This is a difficult showing to make. The right in question must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[17] In other words, a right is clearly established only if precedent "places the constitutional question beyond debate."[18] That usually requires "a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution.[19] And the case must "define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."[20] General principles like "an officer may not use unreasonable and excessive force" are not enough.[21] Instead, an officer must be able to "read the relevant precedent beforehand and know that it proscribed their specific conduct."[22]

---

*Columbia v. Wesby*, 583 U.S. 48, 68 (2018); *White v. Pauly*, 580 U.S. 73, 81 (2017) (per curiam); *Taylor v. Barkes*, 575 U.S. 822, 827 (2015) (per curiam); *Mullenix v. Luna*, 577 U.S. 7, 19 (2015) (per curiam); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 617 (2015).

[16] *Zorn*, 607 U.S. at *3.

[17] *Id.* (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)).

[18] *Id.* (quoting *Rivas-Villegas*, 595 at 5) (citation modified).

[19] *Escondido*, 586 U.S. at 43 (quoting *Wesby*, 583 U.S. at 64).

[20] *Zorn*, 607 U.S. at 3 (quoting *Wesby*, 583 U.S. at 63) (citation modified). The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Sheehan*, 575 U.S. at 613.

[21] *Zorn*, 607 U.S. at 4 (quoting *Kisela*, 584 U.S. at 105).

[22] *Id.* (quoting *Sheehan*, 575 U.S. at 616) (citation modified).

### B. Officer Mooney's conduct was not clearly unconstitutional.

This case involves the right to be free from excessive force under the Fourth Amendment. However, that statement of the law is not specific enough to pierce qualified immunity.[23] The Court must decide whether the caselaw is so clear that "every reasonable official would have understood" that Officer Mooney could not use his taser on Davison.[24] The Court concludes otherwise. The caselaw does not clearly establish that Officer Mooney violated the Constitution.

A survey of Ninth Circuit cases involving tasers reveals a jurisprudence providing little to no concrete guidance to officers (or district judges) in all but the most straightforward cases. Rather than placing the lawfulness of Mooney's conduct "beyond debate," relevant caselaw sows confusion bordering on bewilderment.[25] And the Supreme Court has repeatedly refused to impose liability on officers tasked with protecting the public amidst that confusion. This Court follows that approach.

Turning to circuit precedent, it is well-established that citizens have the "right to be free from the application of non-trivial force for engaging in mere passive resistance" to arrest.[26] So even when someone resists arrest, officers may be barred from using non-trivial

---

[23] *Sheehan*, 575 U.S. 613 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

[24] *See Zorn*, 607 U.S. at 3 (quoting *Rivas-Villegas*, 595 U.S at 5).

[25] *See id.* (quoting *Rivas-Villegas*, 595 U.S. at 5) (citation modified).

[26] *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (finding that right "was clearly established prior to 2008").

force if the resistance is not "particularly bellicose."[27] And "a taser in dart mode constitutes more than trivial force."[28] But ending the inquiry at such a high level of abstraction contravenes the mandate that to be clearly established, a right must be defined with a "high degree of specificity."[29] How is an officer supposed to distinguish, in a split second, whether conduct is nearly bellicose, particularly bellicose, or especially bellicose?[30] It is difficult to imagine the Supreme Court concluding that this bellicosity-continuum standard is clearly defined.[31] Instead of focusing on abstract characterizations of conduct (e.g., as "particularly bellicose"), Courts must "compare the *facts* of [its] case to facts that are sufficiently similar to allow a meaningful comparison."[32]

### 1. It is not clear that using the taser in dart mode was unconstitutional.

In *Jones v. Las Vegas Metropolitan Police Department*, the Ninth Circuit held that "a police officer acted reasonably when he used a taser in dart mode to 'subdue' a fleeing suspect who 'had neither threatened officers nor committed a serious offense, and . . . didn't appear to have a weapon.'"[33] The Ninth Circuit has since relied on *Jones* to

---

[27] *See id.* (emphasizing that resistance "was not particularly bellicose" (quoting *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (citation modified)).

[28] *Id.*

[29] *Zorn*, 607 U.S. at 3 (quoting *Wesby*, 583 U.S. at 63) (citation modified).

[30] *Sheehan*, 575 U.S. at 612 ("The Constitution is not blind to 'the fact that officers are often forced to make split-second judgments.'" (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014)).

[31] *Id.* at 612.

[32] *Johnson v. Myers*, 129 F.4th 1189, 1195 (9th Cir. 2025) (emphasis added).

[33] *Oneal v. Roberts*, No. 23-15429, 2025 WL 444427, at *1 (9th Cir. 2025) (unreported but quoting and summarizing *Jones v. Las Vegas Metropolitan Police Department*, 873 F.3d 1123, 1130 (9th Cir. 2017)); *Hyde v. City of Wilcox*, 23 F.4th 863, 872 (9th Cir. 2022) ("[I]n *Jones*, we concluded that the officers were at first justified in using a Taser on a

find qualified immunity in a case involving a taser because the suspect was "walking away from officers as they approached him and commanded him to get out of the street."[34] Thus under the Ninth Circuit's approach, it appears that as of 2025 officers may sometimes use a taser on suspects walking away from an arrest, even if they are unarmed. Here, Davison admitted that he "took a couple of steps backward" when told he was under arrest.[35] And unlike the suspect in *Jones*, Davison had large knife on his belt, which made him considerably more dangerous.[36] Officer Mooney thus could have read *Jones* (or *Oneal's* summary of *Jones*) and, at a minimum, have made a "reasonable mistake of law regarding the constitutionality of" using his taser in dart mode on Davison.[37]

Davison relies on *Hyde v. City of Wilcox*, which found it unreasonable to use a taser on someone who was suspected of a traffic violation and "no longer threatened the officers after being restrained for two minutes."[38] But the holding of *Hyde* is that it can be unreasonable to use a taser on a "restrained and non-resisting suspect."[39] When Officer Mooney used the taser in dart mode, Davison was not restrained. That is a critical

---

suspect who had run away from a traffic stop but neither threatened the officers nor committed a serious offense.").

[34] *Oneal*, 2025 WL 444427, at *1.

[35] Dkt. 26 at 7.

[36] Dkt. 26 at 8.

[37] *See Bryan v. MacPherson*, 630 F.3d 805, 833 (9th Cir. 2010) (denying en banc rehearing).

[38] 23 F.4th 863, 872 (9th Cir. 2022).

[39] *Id.* (emphasizing that, unlike here, the suspect was "handcuffed, shackled, and exhausted" when constitutional violation occurred).

distinction, and *Hyde* does not clearly establish that Davison had a right to be free from the use of a taser.

Davison also cites *Hermosillo v. County of Orange*, where a district court found it clearly established that "an individual who is stationary, has complied with all officer commands, and is not posing an immediate threat" had a right to be free from being tased in dart mode.[40] As an initial matter, a district court decision cannot create a clearly established right.[41] But in any event, Davison was beginning to walk away and did not put his hands up when instructed—he was neither stationary nor complying with commands. An officer reading *Hermosillo* thus could reasonably conclude that Officer Mooney was authorized to use his taser in dart mode on Davison.

This conclusion can be reconciled with other Ninth Circuit cases involving tasers. For example, in *Bryan v. MacPherson* the Ninth Circuit found that it was clearly unlawful to use a taser on a suspect who was "noticeably unarmed, made no threatening statements or gestures, did not resist arrest, [and] was standing inert twenty to twenty-five feet away."[42] Here, Davison was noticeably armed, had just squared up to a bystander and an officer, and began walking away when put under arrest.

And in *Mattos v. Agarano*, it was unconstitutional (but not clearly so) to use a taser on someone who "posed no threat to the officers," tried "to comply with" officer

---

[40] 562 F.Supp.3d 802, 812 (C.D. Cal 2021).
[41] *Spencer v. Pew*, 117 F.4th 1130, 1142 n.6 (9th Cir. 2024).
[42] 630 F.3d at 809 (Wardlaw, J., concurring, joined by Pregerson, Reinhardt, and Fletcher, JJ.).

commands, and "begged everyone not to wake her sleeping children."[43] That is nothing like the situation here. Davison was armed, acting like he wanted to fight, and walking away from the arrest. With these factual differences in mind, an officer reading *Bryan* and *Mattos* could reasonably conclude using a taser in dart mode on Davison was lawful, even if judges later see the situation differently.[44] Officer Mooney thus is entitled to qualified immunity for using his taser in dart mode on Davison.

### 2. It is not clear that using the taser in drive-stun mode was unconstitutional.

Officers have a duty "to reassess their use of force" when they have "enough time" to do so.[45] Based on this duty, Davison argues that "the four tasings on the ground were unjustified given that [he] was attempting to comply but incapable of putting his arm behind his back while he was being tased and then had complied . . . prior to the final tasing."[46] These tasings happened in drive-stun mode, which is "less incapacitating" than dart mode.[47] At this stage, the Court must credit Davison's assertions that (1) he tried to comply with Officer Mooney's order to place his hand behind his back and (2) he was unable to either because he was being tased or because he was physically restrained. But

---

[43] *Mattos v. Agarano*, 661 F.3d 433, 451 (9th Cir. 2011) (en banc).

[44] *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (barring judges from relying on the "20/20 vision of hindsight").

[45] *Hyde*, 23 F.4th at 871.

[46] Dkt. 26 at 23.

[47] *See Isayeva v. Sacramento Sherrif's Dep't*, 872 F.3d 938, 950 (9th Cir. 2017) (citation modified).

even accepting those facts, precedent does not clearly establish that Officer Mooney's conduct was unconstitutional.

Officer Mooney was the lone officer arresting a blustering suspect armed with a long knife who did not comply with an order to put his hands up and started running away *after* being tased the first time. Under those circumstances, the cases cited by Davison do not clearly establish that it was unconstitutional to use a taser on him in drive-stun mode.

Crucially, the cases Davison cites all involve multiple officers on the scene. For example, in *Hyde* it was unreasonable to use a taser when there were multiple officers present, the suspect was "restrained for two minutes[,] and [he] was no longer capable of resisting in the final stages of the scuffle."[48] That is not the situation Officer Mooney faced. When he deployed the taser in drive-stun mode, Officer Mooney was alone, Davison had been on the ground far less than two minutes, and he arguably was not restrained at all.

The *Hyde* court also quotes *Jones*, emphasizing that once "Jones was prone and *surrounded by multiple officers . . .* there [was] no continuing justification for using intermediate force."[49] Again, Officer Mooney was the only officer on the scene and needed bystander assistance to restrain Davison. Plus, Officer Mooney had been warned that Davison was "hostile to other officers in the area" that very day.[50] These facts are not minor differences, because the "most important single element" in the constitutional analysis is

---

[48] *Hyde*, 23 F.4th at 863.

[49] *Id.* (quoting 873 F.3d at 1130) (emphasis added); *see Drummond ex re. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) (saying force no longer necessary once suspect "was handcuffed and lying on the ground").

[50] Dkt. 22-1 at 1.

whether Davison posed and "immediate threat to the safety of the officers or others."[51] The Court is not permitted to second guess Officer Mooney's heat-of-the-moment decision that bystander help was appropriate or that using his taser was necessary to keep them safe. Because no case clearly establishes that the Constitution bars a lone officer from using a taser on a suspect like Davison before securing handcuffs, Officer Mooney is entitled to qualified immunity.

## IV.   CONCLUSION

Officer Mooney's motion for summary judgment at Docket 22 is GRANTED.

IT IS SO ORDERED.

DATED May 28, 2026 at Anchorage, Alaska.

/s/ *Aaron Christian Peterson*
Aaron Christian Peterson
United States District Judge

---

[51] *Id.*